## THOMAS et al. v. THOMAS.

Court of Appeals of Kentucky.

April 24, 1953.

Emmett G. Fields and J. L. Hays, Whitesburg, for appellants.

C. W. Napier, Sr., C. W. Napier, Jr., and Napier & Napier, Hazard, for appellee.

MOREMEN, Justice.

The controversy decided by the circuit court from which this appeal has been taken involved the question of who was entitled to the proceeds of a condemnation suit which had been instituted by the Louisville and Nashville Railroad Company.

The Railroad Company filed an original action in the Letcher County Court and sought to condemn a right-of-way through property allegedly owned or claimed by appellee, Verna Bowen Thomas, and appellants, Linville Thomas, Bernice Thomas and Virgil Ray Thomas. The issues in the condemnation suit were joined by proper pleadings but, before trial, an order of settlement was entered into between the interested parties fixing the damages for the strip taken at $3500, of which amount $1500 was paid to Verna Bowen Thomas and the remainder was paid to the master commissioner of the Letcher Circuit Court to which forum the action was transferred for the purpose of making a proper distribution among the parties as their interests might appear.

In the circuit court Verna Bowen Thomas filed an amended answer and cross petition against her former husband, Linville Thomas, and her two children, Bernice Thomas and Virgil Ray Thomas; and nominal parties, in which she alleged that on the 9th day of April, 1937, she had become the owner of two tracts of land in Letcher County. One of the tracts described was the parcel of ground through which the Railroad had obtained a right-of-way by reason of the condemnation suit, and to

which we will refer herein as tract No. 2. The other tract was not abutting or adjoining, but was in the vicinity.

It was alleged that on the 12th day of May, 1945, Linville Thomas, who was then appellee's husband, had, by fraud, overpersuasion and duress, taken an unfair advantage of their marital relationship and had caused her to execute a deed for the property (through a trustee) without consideration by which the title to the property was vested in her and her husband, jointly.

It was further stated that thereafter, and on February 1, 1947, appellee's husband, Linville Thomas, filed a divorce action through the course of which Linville Thomas, by fraud, procured her to file and execute a contract by which Linville Thomas agreed to convey to appellee tract No. 2 upon which their home was located and she, in turn, agreed to convey her interest in tract No. 1. These conveyances were made and both deeds contained the reservation that upon the death of either of the grantees, the property was to go to their children, Bernice Thomas and Virgil Ray Thomas.

Appellee prayed that the deed and contract above mentioned be cancelled; that the judgment for divorce which contained the property settlement be set aside, and that she be granted a divorce and judgment for alimony against defendant in the sum of $100 per month.

After issues were joined and hearings had, a judgment was entered by which the deed and agreement above referred to and the judgment incorporating the property agreement were cancelled and set aside. It was further adjudged that the money held by the master commissioner as part of the condemnation proceedings be paid to appellee, Verna Bowen Thomas. Appellee was denied alimony. The answer of Linville Thomas, Bernice Thomas and Virgil Ray Thomas was dismissed with the exception that the court retained the action on the docket for the purpose of taking proof as to whether Linville Thomas was entitled to be reimbursed for improvements which he had placed upon the property.

On the original appeal in this case, appellants urge that the judgment is erroneous, first, because the circuit court permitted appellee to proceed by cross petition against co-defendants upon a cause of action which did not affect or was not affected by the original cause of action; and second, that the evidence introduced was not sufficient to justify the relief granted by the judgment. By cross appeal, appellee insists that the court erred in failing to allow appellee alimony.

The practice of this case involved novel procedure which perhaps falls within the limitations set out in subsection (3), section 96 of the Civil Code of Practice, but we have decided to pass consideration of the technical ground raised in appellant's first objection and proceed to a consideration of the merits of the controversy.

The trial court concluded that Mrs. Thomas had supported her charge that the original deed of May 12, 1945, was executed by her on account of fraud, over-persuasion and duress on the part of her husband, and that it was sustained by sufficient evidence. We cannot reach the same conclusion. She testified that at the time the deed was executed, she was experiencing a difficult menopause; was very sick and was being attended by Dr. Crawford and Dr. Skaggs; had spent most of her time in bed—occasionally, in the hospital. She described the immediate circumstances which preceded the execution of the deed as follows:

"A. He throwed up to me about him paying my doctor bills and grumbled because I was sick so much and said I ought to do him fair, that I had been sick so much and had me waited on, and I said, 'Len, you are aggravating me to death, I can't stand that.' and he said 'sign him half of the place'."

"Q. What did he mean, sign him half of the place? A. He said to sign him half of the place we deeded to Carl Taylor so we would be equal shares; and we come on over here and nothing was never read to me, and I just signed it and he said, 'Get a taxi and go on back home.' The deed was never read to me, before Emmett or John D. one."

■ Although she did not read the instrument, there is no doubt from her testimony that she executed the deed in order to convey the property through the trustee, Carl Taylor, so that the title might vest in appellee and her husband jointly. That was the effect of the deed which she executed and it matters not whether she read the deed before she signed it so long as the instrument did that thing she intended it to do.

It is true that appellee related a story of their marital life which indicated. that her husband, after she became sick, lost interest in her and sought the companionship of a younger woman and in other ways mistreated her, but we find no indication in the record that she did not know exactly what she was doing at the time she executed the deed in 1945, and entered into the property settlement agreement two years later when they divided the property so that each party would have a life estate in the separate tracts with the remainder to their children.

The husband, Linville Thomas, explained his actions insofar as the property rights are concerned by testifying that he improved both pieces of property and spent money, time and material in building a house and outbuildings on tract No. 2 which appellee retained in the divorce property settlement.

This is denied to a certain extent by Mrs. Thomas and concerning this phase of their relationship, she testified:

"Q. I am talking about the home that was built after you got the land? A. Yes, Linville helped build it by my help. Daddy told me he wanted me to have a house seat and before the land was divided I got the house seat and had it sawed.

"Q. Linville's labor and money and time went into the construction of the home you and he owned on the land, didn't it? A. Yes, it done that. But—

"Q. That is all. Just answer my questions. Did you put anything else on the land after you acquired the ownership? A. I bootlegged and paid for the windows and doors that went in the house and my brother got the doors and windows for me

and I bootlegged and paid him back, if you want me to tell it."

A consideration of the testimony adduced concerning the happenings about the time the divorce proceedings were instituted and the property settlement was had also convinces us that Mrs. Thomas was in full possession of her faculties at the time she executed the property agreement which was later made a part of the divorce judgment. It was also shown by the testimony that several months after the property settlement had been reached and the divorce judgment had been entered, Linville Thomas filed suit in the Letcher Circuit Court seeking to require Mrs. Thomas to re-execute a deed to him for his portion of the property (which he alleged had been lost) or, failing in that, to have a special commissioner execute such a deed for her and, although Mrs. Thomas denies she was properly served, the record discloses that in this action she was summoned and that a judgment was entered and a deed was made by the special commissioner of the court.

So here we have a condition where appellee's only claim is based upon her assertion that she was sick; that her husband nagged her to give him a portion of the property in order to reimburse him for labor and money he had expended, which she did, and which she later again affirmatively ratified in her action in the divorce settlement when they divided the property they owned jointly, and again later, in a negative sort of way, she re-affirmed when she failed to answer the suit filed by which her husband sought a new deed to the property.

■ Although the evidence discloses that she was sick and that her husband's conduct in abandoning her and taking up with another woman was reprehensible, still we find nothing that indicates she was not fully aware of all the conditions and exercised her true will during all the transaction.

We believe that appellee failed entirely to prove her case as set out in the amended answer and cross petition. The judgment is therefore reversed. on the original ap-

peal, affirmed on the cross appeal and remanded to the circuit court for the purpose of fixing the value of the estate of appellants, Bernice Thomas and Virgil Ray Thomas, who are contingent remaindermen, and for proceedings consistent with this opinion.